AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
Western District of Virginia

CLERK'S OFFICE U.S. DISTRICT COURT
AT ABINGDON, VA
FILED

APR 17 2024

BY: LAURA A. AUSTIN, CLERK
/s/ R. Bridwell
DEPUTY CLERK

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*

Information associated with the Facebook account name bradley.chester.79 that is stored at premises controlled by Meta Platforms Inc.

Case No. 1:24 mj 26

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the **Northern** District of **California**, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☐ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 846 | Conspiracy to distribute fentanyl and/or methamphetamine |

The application is based on these facts:

See attached Affidavit

☑ Continued on the attached sheet.
☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*/s/ Ryan Temm*
*Applicant's signature*

Ryan Temm, Senior Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 4/17/24

*/s/ Pamela Meade Sargent*
*Judge's signature*

City and state: Abingdon, VA

Pamela Meade Sargent, USMJ
*Printed name and title*

## ATTACHMENT A

### PROPERTY TO BE SEARCHED

This warrant applies to information associated with Facebook account name bradley.chester.79 (Facebook case number 8599998) that is stored at premises owned, maintained, controlled, or operated by Meta Platforms, Inc., a company headquartered at 1 Meta Way, Menlo Park, California 94025.

## ATTACHMENT B

## PROPERTY TO BE SEIZED

### I.     Information to be disclosed by Meta Platforms, Inc. ("Meta Platforms")

To the extent that the information described in Attachment A is within the possession, custody, or control of Meta Platforms Inc., regardless of whether such information is located within or outside of the United States, and including any emails, records, files, logs, or information that has been deleted but is still available to Meta Platforms, Meta Platforms is required to disclose the following information to the government for the account or identifier listed in Attachment A (the "Account"):

A.   All business records and subscriber information, in any form kept, pertaining to the Account, including:

1. Identity and contact information (past and current), including full name, e-mail addresses, physical address, date of birth, phone numbers, gender, hometown, occupation, websites, and other personal identifiers;

2. All Facebook usernames (past and current) and the date and time each username was active, all associated Facebook and Meta Platforms accounts (including those linked by machine cookie), and all records or other information about connections with Meta Platforms, third-party websites, and mobile apps (whether active, expired, or removed);

3. Length of service (including start date), types of services utilized, purchases, and means and sources of payment (including any credit card or bank account number) and billing records;

    4. Devices used to login to or access the account, including all device identifiers, attributes, user agent strings, and information about networks and connections, cookies, operating systems, and apps and web browsers;

    5. All advertising information, including advertising IDs, ad activity, and ad topic preferences;

    6. Internet Protocol ("IP") addresses used to create, login, and use the account, including associated dates, times, and port numbers, from July 1, 2023, through March 13, 2024;

    7. Privacy and account settings, including change history; and

    8. Communications between Meta Platforms and any person regarding the account, including contacts with support services and records of actions taken;

B. All content (whether created, uploaded, or shared by or with the Account), records, and other information relating to videos (including live videos and videos on IGTV), images, stories and archived stories, past and current bios and profiles, posts and archived posts, captions, tags, nametags, comments, mentions, likes, follows, followed hashtags, shares, invitations, and all associated logs and metadata, from July 1, 2023, through March 13, 2024;

C. All content, records, and other information relating to communications sent from or received by the Account from July 1, 2023, through March 13, 2024, including but not limited to:

1. The content of all communications sent from or received by the Account, including direct and group messages, and all associated multimedia and metadata, including deleted and draft content if available;

2. All records and other information about direct, group, and disappearing messages sent from or received by the Account, including dates and times, methods, sources and destinations (including usernames and account numbers), and status (such as delivered, opened, replayed, screenshot);

3. All records and other information about group conversations and video chats, including dates and times, durations, invitations, and participants (including usernames, account numbers, and date and time of entry and exit); and

4. All associated logs and metadata.

D. All content, records, and other information relating to all other interactions between the Account and other Facebook users from July 1, 2023, through March 13, 2024, including but not limited to:

1. Interactions by other Facebook users with the Account or its content, including posts, comments, likes, tags, follows (including unfollows, approved and denied follow requests, and blocks and unblocks), shares, invitations, and mentions;

2. All users the Account has followed (including the close friends list), unfollowed, blocked, unblocked, muted, restricted, or denied a request to follow, and of users who have followed, unfollowed, blocked, unblocked, muted, restricted, or denied a request to follow the Account;

      3. All contacts and related sync information; and

      4. All associated logs and metadata; and

E. All location information associated with the Account, including location history, login activity, information geotags, and related metadata from July 1, 2023, through March 13, 2024.

Meta Platforms is hereby ordered to disclose the above information to the government within 14 days of issuance of this warrant.

## II. Information to be seized by the government

All information described in Section I that constitutes fruits, contraband, evidence, and/or instrumentalities of violations of 21 U.S.C. § 846 (Conspiracy to Distribute Fentanyl and Methamphetamine) involving the subscriber utilizing the listed Account, and occurring on or after July 1, 2023, including, for the account or identifier listed on Attachment A, information pertaining to the following matters:

A. Evidence related to the sale, purchase, and/or distribution of fentanyl and/or methamphetamine or a conspiracy to sell, purchase, and/or distribute fentanyl and/or methamphetamine;

B. The identity of the person(s) who created or used the user ID, including records that help reveal the whereabouts of such person(s); and

C. Records relating to the identity of person(s) who communicated with the user ID about matters relating to the sale, purchase, and/or distribution of fentanyl and/or methamphetamine, and/or a conspiracy to sell, purchase, and/or distribute fentanyl and/or methamphetamine.

*Affidavit in Support of Search of: Information associated with the Facebook account name bradley.chester.79 (SUBJECT ACCOUNT) that is stored at premises controlled by Meta Platforms, Inc., a company headquartered at 1 Meta Way, Menlo Park, California 94025.*

## AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A SEARCH WARRANT

I, Ryan C. Temm, being duly sworn, depose and state the following:

### INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application for a search warrant for information associated with a certain Facebook account name bradley.chester.79 ("SUBJECT ACCOUNT") that is stored at premises owned, maintained, controlled, or operated by Meta Platforms, Inc., a company headquartered at 1 Meta Way, Menlo Park, California 94025. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Meta Platforms, Inc. to disclose to the government records and other information in its possession pertaining to the subscriber or customer associated with the SUBJECT ACCOUNT, including the contents of communications.

2. I am an investigative law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18 United States Code and am empowered by law to conduct investigations and to make arrests for the offenses enumerated in Section 2516 of Title 18 United States Code.

3. I am a Senior Special Agent (SSA) with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) and have been so employed for approximately fifteen (15) years. I received my training with the Federal Law Enforcement Training Center (FLETC), and the ATF at the National Academy in Brunswick, Georgia. At the ATF National Academy, we trained in various investigative techniques to include preparing a proper search warrant. Since becoming a Special

Agent with ATF, I have participated in numerous search and arrest warrants. I have a Bachelor of Arts Degree in Criminal Justice from The George Washington University and a Master of Public Administration from the University of North Carolina at Charlotte. I also successfully completed a basic law enforcement academy with the Charlotte-Mecklenburg Police Department and served nearly eight years as a police officer.

4. Based on my training and experience, my own investigation of this matter, and information I have learned from other law enforcement officers and databases, I submit there is probable cause to believe that violations of 21 U.S.C. § 846 (Conspiracy to Distribute Fentanyl and Methamphetamine), have been committed by the identified subscriber utilizing the SUBJECT ACCOUNT. There is also probable cause to search the information described in Attachment A for evidence and instrumentalities of this crime further described in Attachment B.

5. As this Affidavit is being submitted for a limited purpose, I have not included all facts known by law enforcement. I only set forth facts necessary to support the issuance of the requested search warrant.

6. These conclusions and opinions set forth are based on my experience and training, my direct participation in this investigation as described below, and conversations with other law enforcement officers who are familiar with the facts and circumstances of this investigation. Throughout this Affidavit, all sentences that begin with the words "I believe" are based upon this combination.

## JURISDICTION

7. This court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A), &

(c)(1)(A). Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated. 18 U.S.C. § 2711(3)(A)(i).

## INVESTIGATION AND PROBABLE CAUSE

8. During the second half of 2023, law enforcement in Wise County, Virginia, identified Bradley CHESTER and others as persons who had been selling methamphetamine and fentanyl in the Pound, VA area.

9. On January 31, 2024, agents of the Southwest (Virginia) Drug Task Force (SWDTF) used a Confidential Informant (CS1) to buy 1.4585 grams of fentanyl powder and 0.8726 grams of fentanyl and Xylazine from Bradley CHESTER and Jamie FOSTER at their residence in Pound, VA. The buy occurred at approximately 1:30 p.m. CS1 provided SWDTF Agent Storie with a screenshot from their Facebook Messenger of messages he/she had sent/received to/from Bradley CHESTER's Facebook account (the SUBJECT ACCOUNT) at approximately 9:58 a.m. The messages said:

| | |
|---|---|
| CS1: | You awake yet lol |
| Bradley Chester: | Yo what's up |
| Bradley Chester: | If you need to go by the house you better hurry |
| Bradley Chester: | I got white, black & go fast |
| | Let me know asap |

In my opinion, based on my training and experience and participation in this investigation, "white" refers to fentanyl powder, "black" refers to heroin, or in this case Xylazine, and "go fast" refers to methamphetamine. The Commonwealth of Virginia's Department of Forensic Science laboratory determined the purchased substances were 1.4585 grams of fentanyl powder and 0.8726 grams of fentanyl and Xylazine.

10. On February 01, 2024, Wise County Sheriff's Office Drug Task Force Officers

(TFO) Larry Mullins and Michael Storie interviewed CS2. CS2 signed an Advice of Rights/Miranda waiver. CS2 stated that about two days before January 31, 2024, he/she saw Bradley CHESTER at John Cantrell's residence with a personal use amount of fentanyl. While at Cantrell's residence, he/she arranged to purchase a ½ ounce of fentanyl from CHESTER on January 31, 2024. CS2 stated when he/she got $600 on January 31, 2024, he/she messaged Brad CHESTER on Facebook Messenger and told him he/she had the money.

11. CS2 stated late on the night of January 31, 2024, he/she was at the residence of Bradley CHESTER when CHESTER gave a ½ ounce of fentanyl to Cody Rose. Cody Rose then gave it to him/her. CS2 gave Cody Rose $600, and he counted the money. CHESTER asked Cody Rose how much was there, and Cody Rose responded $600. CS2 stated CHESTER responded $600 was good enough. CS2 stated the deal happened in CHESTER's living room at his residence in Pound, VA.

12. CS2 stated a couple of days before the purchase on January 31, 2024, CHESTER told him/her through Facebook Messenger that he had about a pound of fentanyl.

13. On April 16, 2024, a preservation request was sent to Facebook to preserve data associated with Facebook identification name bradley.chester.79 (the SUBJECT ACCOUNT).

## INTERNET RELATED TERMS

14. When an individual communicates through the Internet, the individual leaves an Internet Protocol (IP) address which identifies the individual user by account and Internet Service Provider (ISP). An IP address, together with the date and time of a communication is unique to each communication. IP addresses are assigned to Internet Service Providers who in turn assign specific addresses to individual users.

15. Internet Service Providers and others who are assigned ranges of IP addresses typically maintain a record of their sub-assignment of individual IP addresses to individual users. When such records are maintained, it is possible to identify the specific account associated with the use of a particular IP address at a specific date and time, and the specific physical computer and location from which the communication is transmitted.

## BACKGROUND CONCERNING FACEBOOK

16. Meta Platforms, Inc. owns and operates a free-access social networking website using the name Facebook that can be accessed at http://www.facebook.com. Facebook allows its users to establish accounts with Facebook, and users can then use their accounts to share written news, photographs, videos, and other information with other Facebook users, and sometimes with the general public.

17. Facebook asks users to provide basic contact and personal identifying information to Facebook, either during the registration process or thereafter. This information may include the user's full name, birth date, gender, contact e-mail addresses, Facebook passwords, Facebook security questions and answers (for password retrieval), physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers. Facebook also assigns a user identification number to each account.

18. Facebook users may join one or more groups or networks to connect and interact with other users who are members of the same group or network. Facebook assigns a group identification number to each group. A Facebook user can also connect directly with individual Facebook users by sending each user a "Friend Request." If the recipient of a "Friend Request" accepts the request, then the two users will become "Friends" for purposes of Facebook and can exchange communications or view information about each other. Each Facebook user's account

includes a list of that user's "Friends" and a "News Feed," which highlights information about the user's "Friends," such as profile changes, upcoming events, and birthdays.

19. Facebook users can select different levels of privacy for the communications and information associated with their Facebook accounts. By adjusting these privacy settings, a Facebook user can make information available only to himself or herself, to particular Facebook users, or to anyone with access to the Internet, including people who are not Facebook users. A Facebook user can also create "lists" of Facebook friends to facilitate the application of these privacy settings. Facebook accounts also include other account settings that users can adjust to control, for example, the types of notifications they receive from Facebook.

20. Facebook users can create profiles that include photographs, lists of personal interests, and other information. Facebook users can also post "status" updates about their whereabouts and actions, as well as links to videos, photographs, articles, and other items available elsewhere on the Internet. Facebook users can also post information about upcoming "events," such as social occasions, by listing the event's time, location, host, and guest list. In addition, Facebook users can "check in" to particular locations or add their geographic locations to their Facebook posts, thereby revealing their geographic locations at particular dates and times. A particular user's profile page also includes a "Wall," which is a space where the user and his or her "Friends" can post messages, attachments, and links that will typically be visible to anyone who can view the user's profile.

21. Facebook allows users to upload photos and videos. It also provides users the ability to "tag" (i.e., label) other Facebook users in a photo or video. When a user is tagged in a photo or video, he or she receives a notification of the tag and a link to see the photo or video. For Facebook's purposes, the photos and videos associated with a user's account will include all photos

and videos uploaded by that user that have not been deleted, as well as all photos and videos uploaded by any user that have that user tagged in them.

22. Facebook users can exchange private messages on Facebook with other users. These messages, which are similar to e-mail messages, are sent to the recipient's "Inbox" on Facebook, which also stores copies of messages sent by the recipient, as well as other information. Facebook users can also post comments on the Facebook profiles of other users or on their own profiles; such comments are typically associated with a specific posting or item on the profile. In addition, Facebook has a Chat feature that allows users to send and receive instant messages through Facebook. These chat communications are stored in the chat history for the account. Facebook also has a Video Calling feature, and although Facebook does not record the calls themselves, it does keep records of the date of each call.

23. If a Facebook user does not want to interact with another user on Facebook, the first user can "block" the second user from seeing his or her account.

24. Facebook has a "like" feature that allows users to give positive feedback or connect to particular pages. Facebook users can "like" Facebook posts or updates, as well as webpages or content on third-party (*i.e.*, non-Facebook) websites. Facebook users can also become "fans" of particular Facebook pages.

25. Facebook has a search function that enables its users to search Facebook for keywords, usernames, or pages, among other things.

26. Each Facebook account has an activity log, which is a list of the user's posts and other Facebook activities from the inception of the account to the present. The activity log includes stories and photos that the user has been tagged in, as well as connections made through the

account, such as "liking" a Facebook page or adding someone as a friend. The activity log is visible to the user but cannot be viewed by people who visit the user's Facebook page.

27. Facebook also has a Marketplace feature, which allows users to post free classified ads. Users can post items for sale, housing, jobs, and other items on the Marketplace.

28. In addition to the applications described above, Facebook also provides its users with access to thousands of other applications ("apps") on the Facebook platform. When a Facebook user accesses or uses one of these applications, an update about that the user's access or use of that application may appear on the user's profile page.

29. Facebook also retains Internet Protocol ("IP") logs for a given user ID or IP address. These logs may contain information about the actions taken by the user ID or IP address on Facebook, including information about the type of action, the date and time of the action, and the user ID and IP address associated with the action. For example, if a user views a Facebook profile, that user's IP log would reflect the fact that the user viewed the profile and would show when and from what IP address the user did so.

30. Social networking providers like Facebook typically retain additional information about their users' accounts, such as information about the length of service (including start date), the types of service utilized, and the means and source of any payments associated with the service (including any credit card or bank account number). In some cases, Facebook users may communicate directly with Facebook about issues relating to their accounts, such as technical problems, billing inquiries, or complaints from other users. Social networking providers like Facebook typically retain records about such communications, including records of contacts between the user and the provider's support services, as well as records of any actions taken by the provider or user as a result of the communications.

31. As explained herein, information stored in connection with a Facebook account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, a Facebook user's IP log, stored electronic communications, and other data retained by Facebook, can indicate who has used or controlled the Facebook account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, profile contact information, private messaging logs, status updates, and tagged photos (and the data associated with the foregoing, such as date and time) may be evidence of who used or controlled the Facebook account at a relevant time. Further, Facebook account activity can show how and when the account was accessed or used. For example, as described herein, Facebook logs the IP addresses from which users access their accounts along with the time and date. By determining the physical location associated with the logged IP addresses, investigators can understand the chronological and geographic context of the account access and use relating to the crime under investigation. Such information allows investigators to understand the geographic and chronological context of Facebook access, use, and events relating to the crime under investigation. Additionally, Facebook builds geo-location into some of its services. Geo-location allows, for example, users to "tag" their location in posts and Facebook "friends" to locate each other. This geographic and timeline information may tend to either inculpate or exculpate the Facebook account owner. Last, Facebook account activity may provide relevant insight into the Facebook account owner's state of mind as it relates to the offense under investigation. For example, information on the Facebook account may indicate the owner's motive and intent to

commit a crime (e.g., information indicating a plan to commit a crime), or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).

32. Therefore, the computers of Facebook are likely to contain all the material described above, including stored electronic communications and information concerning subscribers and their use of Facebook, such as account access information, transaction information, and other account information.

## INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED

33. I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using the warrant to require Meta Platforms Inc. to disclose to the government copies of the records and other information (including the content of communications) particularly described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

## COOPERATING SOURCES

34. Throughout this affidavit, I have identified Confidential Sources (CS), individuals who were interviewed and/or assisted law enforcement during this investigation. I believe the information provided by them and included in this affidavit is credible and reliable for the following reasons: the debriefings included statements against their own penal interest, the information provided by the individuals matched information received from other sources, and much of the information was confirmed by other investigative methods. Some of these methods included surveillances and records acquired during the investigation.

35. CSs are utilized for several reasons: a CS might be a member of the target

organization and therefore have easy access to information needed by law enforcement; a CS might have a relationship with members of the target organization, making it easy to purchase and/or locate illegal substances, profits, etc.; and in many situations, a CS provides to law enforcement the opportunity to infiltrate an organization when all other means are exhausted.

36. CS1 had not been arrested, nor was he/she on bond for criminal violations. CS1 provided information on criminal activity, including drug traffickers, in return for consideration on his/her spouse's bond and/or reduced sentence.

37. CS2 was arrested for a violation of state law and was in jail at the time of his/her involvement in this investigation. CS2 provided information on other crimes, including drug traffickers, in return for consideration on bond and/or a reduced sentence.

## CONCLUSION

38. Based on the foregoing information, I believe that probable cause exists that evidence of violation of 21 U.S.C. § 846 (Conspiracy to Distribute Fentanyl and Methamphetamine) has occurred by Bradley CHESTER utilizing the SUBJECT ACCOUNT. I request that the Court issue the proposed search warrant.

39. Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.

40. The government will execute this warrant by serving the warrant on Meta Platforms Inc. Because the warrant will be served on Meta Platforms Inc., who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

I declare under penalty of perjury that the statements above are true and correct to the best of my knowledge and belief.

Respectfully submitted,

Ryan C. Temm
Senior Special Agent
Bureau of Alcohol, Tobacco, Firearms and Explosives

Subscribed and sworn to before me this __17th__ day of April, 2024.

Honorable Pamela Meade Sargent
United States Magistrate Judge
Western District of Virginia

Reviewed by: Lena Busscher, AUSA